IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CRAIG ROBBINS                               :
                    Plaintiff              :
                                            :
        v.                                  :       3:CV-08-0188
                                            :       (JUDGE VANASKIE)
UNITED PARCEL SERVICE, INC. ,              :
TEAMSTERS LOCAL UNION 229,                 :
AFFILIATION OF INTERNATIONAL               :
BROTHERHOOD OF TEAMSTERS                    :
                    Defendants             :

MEMORANDUM

Plaintiff, Craig Robbins, was discharged from his position as a package car driver for

United Parcel Service ("UPS") after he struck and injured a woman with his UPS truck.

Plaintiff, a member of Teamsters Local Union 229, Affiliation of International Brotherhood of

Teamsters ("Local 229"), grieved his termination under the provisions of the collective

bargaining agreement.  The discharge, however, was ultimately upheld.  Plaintiff now avers

that Local 229 breached its duty of fair representation and that UPS breached the collective

bargaining agreement.  (Dkt. 1.)[1]  Because the record clearly shows that Local 229 did not

breach its duty of fair representation, summary judgment will be entered in its favor and this

action will be dismissed.

---

[1]  For the convenience of the reader of this Memorandum opinion, hyperlinks to the
Court's electronic record and to authority cited herein have been inserted.  No endorsement
of any provider of electronic resources is intended by the use of hyperlinks.

I. Background

Plaintiff was employed as a package car driver by UPS out of its Pocono Center Facility between June 8, 1989, and July 30, 2007.  (Defendant's Statement of Undisputed Material Facts ("DSUMF"), Dkt. 20, at ¶ 1.)  On July 27, 2007, while Plaintiff was delivering packages for UPS in the Thompson area, he was involved in an accident with a pedestrian, Robyn Leonard.  (Id. at ¶ 2.)  During a delivery, Plaintiff realized that he had missed a prior stop and decided to go back and make the delivery, rather than running a stop behind. "After beeping his horn and checking his mirrors and monitor," Plaintiff backed his vehicle up to make the delivery he had inadvertently missed.  (PSUMF, Dkt. 27, at ¶ 3.)  While backing up Plaintiff felt a sudden bump and immediately stopped the vehicle, discovering that he had hit Ms. Leonard, who was walking behind his truck.  (DSUMF, Dkt. 20, at ¶ 4.) Plaintiff called 911 and remained with Ms. Leonard until the ambulance arrived.

Ms. Leonard sustained non-life-threatening injuries as a result of the accident and was taken to the Susquehanna Hospital Emergency Room.  (Accident Report, Dkt. 29-4, at 112.)[2]  The Pennsylvania State Police ("PSP") interviewed Plaintiff regarding the accident, but did not issue a citation as a result of the accident.  (Complaint, Dkt. 1, at ¶¶ 21-22.)  A UPS supervisor also interviewed Plaintiff and instructed him to report to UPS's Scranton

---

[2] Citations to page numbers refer to the electronic page number of the document on the CM/ECF electronic docket sheet.

facility on Monday, July 30, 2007, for a meeting.  (Id. at ¶¶ 23-24.)

Local 229 and UPS were parties to the National Master United Parcel Service

Agreement ("National Agreement") and the Central Pennsylvania Supplemental Agreement

("Supplemental Agreement") between August 1, 2002, and July 31, 2008.  (DSUMF, Dkt.

20, at ¶ 8.)  As a member of Local 229, Plaintiff was "a party to the collective bargaining

agreement between inter alia, UPS and Local 229, effective for the period in question."

(Complaint, Dkt. 1, at ¶ 50.)

On July 30, 2007, Plaintiff met with UPS's Supervisor of Labor Relations, Mark

Johnson.  (Id. at ¶ 25.)  At the meeting, Local 229's Business Agent, Robert Oakes,

represented Plaintiff.  (Id. at ¶ 29.)  Plaintiff did not request representation by Mr. Oakes.

(Id. at ¶ 30.)  Instead, Plaintiff had requested that Union Steward Charles Miller serve as his

representative.  Although Miller was readily available and on the premises at the time of the

meeting, Plaintiff's request was denied.  (Id. at ¶¶ 26-28.)  At the end of the meeting Plaintiff

received a letter of discharge, terminating his employment.  (PSUMF, Dkt. 27, at ¶ 6.)

Article 52 of the Supplemental Agreement, which provides for discharge and

suspension, states:

> The Employer shall not discharge or suspend any employee without just
> cause, but in respect to discharge or suspension shall give at least one (1)
> warning notice of a complaint against such employee to the employee, in
> writing, and a copy of the same to the Union, except that no warning notice
> need be given to an employee before he/she is discharged if the cause of
> such discharge is dishonesty, drinking alcoholic beverages or being under the

influence of drugs or in illegal possession of drugs during the workday
(including meal period) or drunkenness, recklessness resulting in serious
accident while on duty, or the carrying of unauthorized passengers while on
the job <u>or offenses of equal seriousness</u>. . . . .  Before disciplinary action is
taken, a <u>meeting</u> shall be held with the employee and the employee shall
have the <u>right to choose a Steward who is readily available and on the
premises</u>.  In the case of discharge for any offense <u>other than the above
mentioned</u>, including suspension, the disciplinary action will be held in
abeyance for two (2) weeks to give the Local Union the opportunity to
intervene prior to the action being taken.  The warning notice, suspension or
discharge as herein provided shall not remain in effect for a period of more
than nine (9) months from the date of said warning notice, suspension or
discharge.

. . . . Any employee <u>may request</u> an investigation as to his/her discharge or
suspension.  Should such investigation prove that an injustice has been done
an employee, he/she shall be reinstated.  The CPAPGC or the impartial
arbitrator shall have the authority to order full, partial or no compensation for
time lost. . . . .

The Company will not use absenteeism or accidents in conjunction with any
other disciplinary action.

(Supplemental Agreement, Dkt. 13-2, at 39) (emphasis added).

The discharge letter accused Plaintiff of being "grossly negligent in the operation of

the package car" and discharged him  "immediately for just cause."  (Discharge Letter, Dkt.

1, at 19.)  Plaintiff grieved his termination under the terms of the Supplemental Agreement.

(DSUMF, Dkt. 20, at  ¶ 7.)

Plaintiff's grievance was heard by the Central Pennsylvania Area Parcel Grievance

Committee ("CPAPGC") in Bethlehem, Pennsylvania, on August 2, 2007 (the "hearing").[3] (PSUMF, Dkt. 27, at ¶ 10.)  At the hearing, Oakes presented Plaintiff's grievance.  (Id. at ¶ 14.)  Plaintiff, however, had again sought and requested the representation of Union Steward Miller.  (Id.)  Plaintiff's request was denied, even though Miller was ready, willing, and able to represent Plaintiff.  (Id.)

Plaintiff was present at the hearing and testified regarding his grievance.  (DSUMF, Dkt. 20, at ¶ 15.)  "The Union submitted both written and oral arguments in support of the Grievance of Plaintiff Robbins and in support of its assertion that Robbins was discharged without just cause."  (Id. at ¶ 32.)  Local 229's argument focused on the fact that the "just cause" language of Article 52 of the Supplemental Agreement had not been followed and reiterated that "[t]o take a man's job of 18 plus years away for a momentary lapse in judgment" was not "just punishment."  (Dkt. 11-11, at 2.)  Plaintiff avers that at the hearing a distorted driving record ("doctored driving record") was presented.  (Dkt. 1, at ¶ 41.)

Oakes and Plaintiff objected to the introduction of the doctored driving record and informed the CPAPGC that the exhibit contained statements and accidents that were not listed on the document when Plaintiff signed it.[4]  (PSUMF, Dkt. 27, at ¶ 19.)  The CPAPGC,

---

[3] The CPAPGC is comprised of an equal number of Union and Company representatives.

[4] Oakes objected to the admission of the doctored driving record, stating: "This accident history is more than 9 months old . . . after 9 months according to Article 52 your

after executive session to discuss the document, determined that it could be presented but Plaintiff and Local 229 would be given the opportunity to rebut the document.  (DSUMF, Dkt. 20, at ¶ 18.)

The material facts relating to the accident giving rise to Plaintiff's discharge were not in dispute.[5]  At the hearing, Plaintiff testified that the accident occurred because he had

_____

[sic] not suppose to bring this into evidence."  (Hearing Transcript, Dkt. 29-3, at 3.)  Oakes went on to argue that the evidence was also inadmissible because there was no proof of the occurrence of prior discipline.  (Id. at 4.)  During rebuttal Oakes argued:

> Craig doesn't recall [the accidents] being on there when he signed this.  The fact I don't know how it could be on there . . . there is 10 accidents, 4 backing 1 sideswipe – that wasn't on there when he signed it.  It was put on there afterwards obviously.  In summation we know that this was a real serious problem – Craig does regret it as we heard from his statement.  We ask this Panel to put him back to work and give him another chance.

(Id. at 9.)  Plaintiff himself also opposed the authenticity of the documents.  When asked whether the accidents were on the form when he signed the review, Plaintiff stated:

> To be truthful with you sir, if they were on the form I don't think I would have ever signed it. . . . I've gone with S&V's, and they say this is what I'm going to put down there, just sign here and that's it.  I'm a trusting person . . . but it comes under the heading of falsifying records and that is definitely a no no.

(Id. at 19.)  At the same time, however, Plaintiff admitted to the accidents, initially stating that he did not specifically recall the accidents, but was sure that they had occurred.  (Id. at 13.)  He later recounted details of some of the accidents.  (Id. at 17-19.)  Significantly, Plaintiff acknowledged that he had three prior accidents that involved his backing of a panel truck. (Id. at 19.)

[5]  It should be noted, however, that although the material facts regarding the accident were not in dispute, Oakes objected to a number of the statements made by UPS at the hearing, including the distance between the two deliveries, language used to describe the

missed a stop and decided to back up because of the time constraints imposed upon him by

UPS.  (PSUMF, Dkt. 27, at ¶¶ 20, 23.)  Plaintiff knew that backing up violated UPS policy,

but felt that UPS valued production over safety.[6]  (Id.)  Additionally he admitted that

although he tried to back up only when necessary, sometimes he backed up more often,

explaining: "I understand there's safety issues here and there is also . . . production issues

also and pretty much when you have both and you preach safety and production they go

hand in hand and unfortunately when some of these trips do leave the building they do

leave well overloaded." (Hearing Transcript, Dkt. 29-3, at 15.)  Plaintiff also averred that his

past accidents had occurred because he had taken on an unfamiliar delivery route to help

other employees, had been confronted with difficult road conditions, or had been faced with

time constraints; but admitted that he could not recall the details of his past accidents.  (Id.

at 7, 12, 15, 17.)

    Plaintiff was aware of the danger of backing up a UPS delivery truck, and when

asked if he knew of the safe procedures for backing up stated, "[w]ell I believe there is no

─────────────

accident, and alleged admissions by Plaintiff.  (Hearing Transcript, Dkt. 29-3, at 9.)

    [6] Plaintiff stated: "I know that backing up is a no no in this job.  It is against the rules,
it is against the laws for UPS." (Hearing Transcript, Dkt. 29-3, at 7.)  His response went on
to state that his decision to back up "comes under production and safety and you know to
weigh the two, and I think we're more oriented as a company – pushing the envelope until
something happens – as you see here I am." (Id. at 21.)  Plaintiff also stated, "I'm sure
there's other drivers out there that back up unnecessarily.  And shame on them but
unfortunately this is something that I had done – shame on me – and like I said I was
caught." (Id. at 12.)

safe way of backing because every time obviously it's a crap shoot." (Id. at 22-23.)  At the end of the hearing, Plaintiff answered in the affirmative when asked if he felt he had been given an ample opportunity to present any and all facts as he saw fit in his case and whether he felt as though he had been properly represented by his Business Agent and Local 229.  (Id. at 23.)  The CPAPGC, by majority decision, ultimately upheld Plaintiff's discharge. (PSUMF, Dkt. 27, at ¶ 11; Grievance Decision, Dkt. 1, at 26.)

After the hearing, Plaintiff wrote a letter to Oakes, requesting that the matter be submitted to an arbitrator pursuant to Section 2, Article 51, of the Supplemental Agreement. (Arbitration Request, Dkt. 1, at 36.)  Section 2 provides that: "If any grievance or dispute cannot be satisfactorily settled by a majority decision of the Panel of the CPAPGC then the grievance shall be submitted to the American Arbitration Association . . . ." (Supplemental Agreement, Dkt. 13-2, at 38.)  Oakes responded to the letter by informing Plaintiff that once a majority decision is reached by the CPAPGC, the decision cannot be arbitrated, as only deadlocked cases may be arbitrated.[7]  (Arbitration Reply, Dkt. 1, at 38.)

On January 30, 2008, Plaintiff filed the current action against UPS and Local 229, claiming breach of the duty of fair representation and breach of the collective bargaining

---

[7] Additionally, the Grievance Decision states that the parties agree that a "majority decision of the Joint Committee in the above dispute will be final, conclusive and binding, with no appeal, and further, that neither party will attempt through overt acts to avoid any decision rendered." (Grievance Decision, Dkt. 1, at 26.)

agreement.[8]  (Dkt. 1.)  Local 229 filed the current Motion to Dismiss or for Summary Judgment on March 25, 2008.  (Dkt. 11.)  The matter has been fully briefed and is ripe for review.

## II. Discussion

### A. Standard of Review

Local 229's Motion to Dismiss is supported by several documents outside the pleadings.  (Dkts. 11-4; 11-9; 11-10; 11-11; 11-12; 33.)  Further, Plaintiff has also included various documents in his opposition papers.  (Dkts. 13; 29-2; 29-3; 29-4.)  When matters outside the pleadings are presented to the court, a motion to dismiss is treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(b)(6).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).   "Facts that could alter the outcome are material facts."  Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994).

---

[8] This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185.

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

B. Duty of Fair Representation

"The duty of fair representation is a judicially created doctrine that requires unions to provide fair representation for their members because unions are their authorized exclusive bargaining agents." Ibbetson v. Teamsters Local 384, No. 06cv3661, 2007 WL 3085851, at *2 (E.D. Pa. Oct. 22, 2007).  "A duty of fair representation claim against a union has two elements: (1) the union's conduct must have been arbitrary, discriminatory, or in bad faith, and (2) the union's conduct must have seriously undermined the arbitral process." Id. at *2 (citations omitted); see Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998); Raczkowski v. Empire Kosher Poultry, 185 Fed. App'x 117, 118 (3d Cir. 2006).

An "employee must present credible evidence to prove that the union's conduct was in fact arbitrary, discriminatory, or undertaken in bad faith.  More than mere unsupported allegations are required to justify a finding of bad faith on a union's part." Bellesfield v. RCA Commc'ns, Inc., 675 F. Supp. 952, 956 (D.N.J. 1987) (citations omitted); see Medlin v. Boeing Vertol Co., 620 F.2d 957, 961 (3d Cir. 1980); Hubicki v. ACF Indus., Inc., 484 F.2d 519, 526 (3d Cir. 1973).  Instead, "it is incumbent on plaintiff to allege that the union acted arbitrarily or with a bad faith motive." Larry v. Penn Truck Aids, Inc., 94 F.R.D. 708, 717

(E.D. Pa. 1982) (citing Riley v. Letter Carrier Local No. 380, 668 F.2d 224, 228 (3d Cir. 1981)).  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational."  Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citations omitted).

"A union's tactical decision made in the course of representation needs to be an egregious error of judgment to seriously undermine the arbitral process."  Ibbetson, 2007 WL 3085851, at *2.  "Consequently, a union is accorded a wide range of reasonableness to perform effectively," and "has broad discretion in its decision whether and how to pursue and employee's grievance against an employer."  Id.; Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68 (1990).

Plaintiffs must show actual bad faith or arbitrary conduct; the mere fact that trained counsel would have pursued a different strategy or avoided an error is not enough.  Riley, 668 F.2d at 228.  The grievance hearings are conducted informally, without rules of evidence, without trained legal persons, without subpoena power, and without the authority to provide discovery; "it is in this context that the action of the union representatives must be judged."  Findley v. Jones Motor Freight, Division Allegheny Corp., 639 F.2d 953, 958 (3d Cir. 1981).  Moreover, "'mere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct'" necessary to prove

breach of fair representation.  Riley, 668 F.2d at 228 (quoting Findley, 639 F.2d at 960 n.2);

see, e.g., Ahmad v. United Parcel Serv., 281 Fed. App'x 102, 105 (3d Cir. 2008); Bazarte v.

United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970).

Thus, a breach of duty only occurs when the union's actions may be fairly

characterized as "so far outside a 'wide range of reasonableness,' . . . that it is wholly

'irrational' or 'arbitrary.'"  Air Line Pilots Ass'n, Int'l, 499 U.S. at 78.  "Accordingly, the issue

here is whether the union's representation in the grievance proceedings was within the

'range of acceptable performance,' and if not, whether it tainted the adverse arbitral

decision."  Findley, 639 F.2d at 958.  Although the perimeters of the minimum range of

acceptable performance cannot be too lax, "to hold lay union representatives to the

demanding tests applied to a trained trial lawyer would defeat the aims of informality and

speedy resolution contemplated by labor-management grievance agreements."  Id.

Plaintiff asserts four claims in support of his averment that Local 229 breached the

duty of fair representation: 1) denial of representation by his requested Steward; 2) failure of

Local 229 to hold disciplinary action in abeyance for two (2) weeks; 3) failure of Local 229 to

inform Plaintiff of his right to an investigation; and 4) denial of Plaintiff's right to appeal the

CPAPGC's decision to an arbitrator.  Examination of Local 229's alleged failings in the

context of the undisputed record do not, either singly or in combination, demonstrate

prejudice.

1. Denial of Steward of Choice

Plaintiff's first allegation is that Local 229's failure to provide him with his Steward of choice at the hearing adversely impacted him.  (Dkt. 28, at 12.)  The Supplemental Agreement clearly provides that "[b]efore disciplinary action is taken, a <u>meeting</u> shall be held with the employee and the employee shall have the right to choose a Steward who is readily available and on the premises."  (Dkt. 13-2, at 39) (emphasis added).  Here, however, the fact that Local 229 failed to provide Plaintiff with a Steward of his choice at the July 30, 2007 meeting, cannot be argued to have affected the outcome of the hearing.  The Supplemental Agreement does not specifically provide Plaintiff with the right to choose a Steward for his hearing, and thus, the mere fact that Oakes was not Plaintiff's representative of choice at the meeting did not affect his representation or indicate that the representation was outside the range of acceptable performance.

Nor can Plaintiff show a breach of the duty of fair representation because it was Oakes, and not Miller, who presented the grievance to the CPAPGC.[9]  The transcript of the hearing indicates that although Oakes' representation may not have met the high standard of eloquence befitting an experienced trial attorney, it also did not suggest that the

---

[9]  Oakes' affidavit reveals that during his five (5) years as a Business Representative and the twelve (12) year period prior to that, any grievance initiated by Local 229 was submitted to the CPAPGC "by the Business Representative of Teamsters Local 229." (Oakes Affidavit, Dkt. 33, at 3.)  Oakes also noted that he had "never witnessed any person other than a Business Representative present a grievance" to the CPAPGC. (<u>Id.</u>)

representation was unreasonable, arbitrary, or outside the range of acceptable

representation.  Oakes presented the CPAPGC with favorable evidence in support of

Plaintiff's claim and objected to the production of inadmissible evidence.  Oakes reiterated

Plaintiff's length of service, and the fact that Plaintiff had "endeavored to work hard at being

on time, not being absent from work and promoting business for UPS." (Dkt. 11-11, at 1.)

Oakes objected to the production of the "doctored driving record" and evidence of accidents

more than nine months old.  (See Hearing Transcript, Dkt. 29-3, at 3, 4, 9.)  He additionally

objected to alleged inaccurate statements made by UPS, and discounted the allegation that

Plaintiff had made certain admissions.  (Id. at 9.)

It is also significant to note that Plaintiff answered in the affirmative when asked

whether he had presented all relevant evidence and whether he felt he had been

adequately represented by Local 229.  In Braxton v. United Parcel Serv., Inc., 806 F. Supp.

537, 543 (E.D. Pa. 1992), the court found that answering yes to questions about whether

the plaintiff felt as though he had been properly represented by his local union and whether

he felt he had been given an opportunity to bring out all facts pertaining to his discharge

was a significant factor in determining whether the duty of fair representation had been

breached.  See also Scalzo v. Insalaco's Mkts., 37 F. Supp. 2d 376, 377 (M.D. Pa. 1998)

(no breach of duty of fair representation when plaintiff was asked whether he felt he had

been properly represented and given a fair hearing, and responded, "I guess I have. You

know . . I guess, I have, yeah"); Jones v. United Parcel Serv., Inc., No. 03-0284, 2005 WL 1009572, *12 (W.D. Mo. April 7, 2005), aff'd, 461 F.3d 982 (8th Cir. 2006) (determining that "Jones' claim that Local 41 breached its duty of fair representation with regard to his Termination Grievance" would be "wholly disingenuous given the fact that he admitted that he was properly represented by the union at the MoKan panel hearing").  Plaintiff's affirmative answers in this case provides additional evidence that Oakes' representation was not outside the realm of acceptable performance.  See Findley, 639 F.2d at 958; Air Line Ass'n Int'l, 499 U.S. at 78; Riley, 668 F.2d at 228.

Furthermore, independent review of the evidence in a light most favorable to Plaintiff reveals that Oakes competently advocated Plaintiff's position in a reasonable manner, and did nothing to undermine the arbitral process.[10]  See Air Line Pilots Ass'n Int'l, 499 U.S. at

---

[10]  Plaintiff's argument that there are factual questions regarding who was responsible for Oakes' representation has no bearing on the determination of whether Plaintiff was prejudiced by Oakes' representation.  Even if discovery established an improper purpose from Oakes' appointment, that background would not affect the inquiry as to whether Plaintiff was prejudiced, or change this Court's assessment of the quality of Oakes' actual representation at the hearing.  Plaintiff must be able to show not only conduct that is arbitrary, discriminatory, or in bad faith, but also that the conduct seriously undermined the arbitral process. See Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989).  Thus, as Oakes' advocacy did not seriously undermine the arbitral process, it is unnecessary to determine whether it was arbitrary, discriminatory, or in bad faith to have Oakes serve as the representative instead of the Steward of Plaintiff's choice. See Ibbetson, 2007 WL 3085851, at *3.  It bears noting, however, that the fact that the Business Representative always represents Local 229 members at grievance hearings undermines Plaintiff's assertion that Local 229's action was arbitrary, discriminatory, or in bad faith.

67; Ibbetson, 2007 WL 3085851, at *2; Findley, 639 F.2d at 958.  Accordingly, the fact that Plaintiff was not represented by the person of his choice does not mean that Local 229 breached its duty of fair representation.  On the contrary, the record discloses no breach of Local 229's obligation to provide fair representation to its member.  See Ibbetson, 2007 WL 3085851, at *2-3 (granting summary judgment on fair representation claim based in part on plaintiff's claim that another union officer should have represented him where there was no evidence that the person who represented him did so in a manner that undermined the arbitral process).[11]

2. Two Week Abeyance

Plaintiff's averment that  Local 229 failed to enforce Article 52 of the Supplemental Agreement, providing abeyance of disciplinary action for two (2) weeks, is without merit. Article 52 of the Supplemental Agreement provides that "[i]n the case of discharge for any offense other than the above mentioned, including suspension, the disciplinary action will be held in abeyance for two (2) weeks to give the Local Union the opportunity to intervene prior to the action being taken."  (Dkt. 13-2, at 39) (emphasis added).

---

[11] Ruffin v. United States Postal Serv., Civ. A. No. 92-0685, 1992 WL 437504 (E.D. Pa. Nov. 3, 1992), on which Plaintiff relies, involved averments that union officials had acted arbitrarily in giving the plaintiff bad advice that affected the grievance process.  No such averments have been made here.  Plaintiff has not suggested any course of action that Local 229 could have taken to avoid his dismissal, and does not point to any action taken by Local 229 that caused his discharge.

The "above mentioned" offenses in Article 52 of the Supplemental Agreement include "dishonesty, drinking alcoholic beverages or being under the influence of drugs or in illegal possession of drugs during the workday (including meal period) or drunkenness, recklessness resulting in serious accident while on duty, or the carrying of unauthorized passengers while on the job or offenses of equal seriousness." (Supplemental Agreement, Dkt. 13-2, at 39; emphasis added.)  Because Plaintiff was discharged for an offense of "equal seriousness" to the listed offenses, he was not entitled to a two (2) week stay of the disciplinary action.

Plaintiff asserts that had the hearing been held in abeyance for two (2) weeks, Plaintiff could have prepared the Steward representing him, the Steward could have become familiar with Plaintiff's work history, and Plaintiff would have been able to present the PSP report to the CPAPGC.  Here, Plaintiff's prior work history was not at issue, and in fact, Oakes properly argued that review of Plaintiff's prior accidents were in violation of the Supplemental Agreement.  (Hearing Transcript, Dkt. 29-3, at 3.)  Moreover, Plaintiff has failed to specify any facts regarding his employment which were not presented at the hearing.

Plaintiff argues that the presence of the PSP report would have proved that Plaintiff's accident was not a "serious accident" as defined by the National Agreement since it did not involve a fatality, a citation was not issued, an aircraft was not damaged, and the accident

did not occur on company property.  (See National Agreement, Dkt. 13, at 28.)  Plaintiff, however, was not terminated as a result of a "serious accident," but instead was terminated under the "offense of equal seriousness" clause of Article 52.  Thus, it is immaterial that the PSP report would have proven that no citation was issued as Plaintiff was terminated based on his "grossly negligent" operation of his package car.  (Termination Letter, Dkt. 1, at 19.)  Plaintiff's offense was clearly an offense which UPS, and by implication, the CPAPGC, considered to be of "equal seriousness" to those set forth in Article 52.  Thus, there was no contractual obligation to hold the discharge in abeyance for two weeks or issue a written warning notice.  Furthermore, Plaintiff did tell the CPAPGC that the state police officer assured Plaintiff that no citation would be issued.  Consequently, Plaintiff was not prejudiced by the failure of Local 229 to have UPS delay the effective date of the disciplinary action by two (2) weeks.[12]

### 3. Investigation

Plaintiff's third argument is that Local 229 acted arbitrarily by not performing a reasonable investigation into his grievance.  In some circumstances, a union's failure to perform an investigation "may prove inadequate presentation of a grievance. . . .

---

[12] Plaintiff's reliance upon Seafarers Int'l Union v. Thomas, 42 F. Supp. 2d 547 (D. V.I. 1999), is misplaced.  That case involved the dismissal of a grievance as untimely where the plaintiff had been misled by representations of union officials that they were processing her claim when they were not.  Id. at 555.  No such conduct is at issue here.

Nevertheless there must be a demonstration that the omission damaged the grievance presentation." Findley, 639 F.2d at 959 (citing Hines v. Local 377, Teamsters Union, 506 F.2d 1153 (6th Cir. 1974); Siskey v. Gen. Teamsters Local No. 261, 419 F. Supp. 48, 53 (W.D. Pa. 1976)).  "Although a union's failure to investigate and uncover the 'true facts' might well establish a breach of the duty of fair representation, there can be no breach of the duty of representation absent a showing that the true and complete facts would have compelled a different result." McCoy v. Hess Oil of Virgin Islands, Corp., 206 F. Supp. 2d 726, 730 (D. V.I. 2002) (citing Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568 (1976)).

The record reflects that Local 229 did advocate in support of Plaintiff, and that lack of an extensive investigation did not damage the grievance presentation.  During the hearing, Oakes rebutted the "doctored driving record" and objected to the use of evidence more than nine months old.  Plaintiff himself admitted to the conduct that caused the incident, and the facts regarding the incident were not in dispute.  Plaintiff also admitted that he had three "backing" accidents prior to hitting the pedestrian while backing up.  Moreover, the only evidence Plaintiff alleges was not present was the PSP report, the contents of which he described to the CPAPGC, and the presence of which would clearly not have "compelled a different result." See McCoy, 206 F. Supp. 2d at 730; Findley, 639 F.2d at 959.  Thus, Plaintiff's averment that the absence of an extensive investigation adversely impacted his

grievance presentation is without merit.

4. Arbitration

Plaintiff's final claim is that he was contractually entitled to have his grievance heard by an arbitrator. The Supplemental Agreement provides that "[i]f any grievance or dispute cannot be satisfactorily settled by a majority decision of the Panel of the CPAPGC then the grievance shall be submitted to the American Arbitration Association . . . . It is agreed that the arbitrator is empowered to hear and decide the deadlocked case . . . ." (Dkt. 13-2, at 38.) Here, the CPAPGC hearing did not result in deadlock. The CPAPGC issued a majority decision upholding Plaintiff's termination. Thus, Plaintiff was not entitled to arbitration. An individual employee does not have an "absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." Vaca v. Sipes, 386 U.S. 171, 191 (1967); see, e.g., Ahmad v. United Parcel Serv., 281 Fed. App'x 102, 105 (3d Cir. 2008) ("the law is clear that there is no absolute right to arbitration"). Accordingly, the decision of Local 229 to not pursue arbitration cannot be viewed as arbitrary, discriminatory, or in bad faith.

C. Claims against UPS

A plaintiff must prove breach of the duty of fair representation on the part of the union before the employer may be held liable for damages arising from an alleged breach of a collective bargaining agreement. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151,

165 (1983) ("'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'").  "[T]he Supreme Court has held that a member's fair representation claim against his union serves as an 'indispensable predicate to his breach of contract action against his employer.'" Braxton v. United Parcel Serv., Inc., 806 F. Supp. 537, 546 (E.D. Pa. 1992) (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62 (1981)).  Because it has been determined that Plaintiff's fair representation claim against Local 229 is without merit, Plaintiff's claim against UPS will be dismissed as well.[13]  See id.

III. Conclusion

        For the reasons stated herein, Local 229's Motion to Dismiss or Motion for Summary Judgment will be granted.  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

        [13] Furthermore, the parties agreed at the May 5, 2008 Case Management Conference that if Local 229's Motion to Dismiss or for Summary Judgment was granted, Plaintiff's claim against UPS would be subject to dismissal.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CRAIG ROBBINS                              :
                    Plaintiff              :
                                           :
        v.                                 :        3:CV-08-0188
                                           :        (JUDGE VANASKIE)
UNITED PARCEL SERVICE, INC. ,              :
TEAMSTERS LOCAL UNION 229,                 :
AFFILIATION OF INTERNATIONAL              :
BROTHERHOOD OF TEAMSTERS                   :
                    Defendants             :

ORDER

NOW THIS 24th DAY OF MARCH 2009, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant Teamsters Local Union 229, Affiliation of International Brotherhood of

Teamsters' Motion to Dismiss or for Summary Judgment (Dkt. 11) is GRANTED.

2. The claims against United Parcel Service, Inc. are DISMISSED.

3. The Clerk of Court is directed to enter judgment in favor of Defendants and to

mark this matter CLOSED.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge